# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JUSTIN ANDERSON,**
          Petitioner,

     v.                                                      Case No. 15-C-0355

**RANDALL HEPP, Warden,**
**Fox Lake Correctional Institution**
          Respondent.

## DECISION AND ORDER

Justin Anderson petitions for a writ of habeas corpus under 28 U.S.C. § 2254.

## I. BACKGROUND

Anderson was charged with seven felonies in connection with a home invasion, including sexual assault, false imprisonment, burglary, robbery, and substantial battery. According to the criminal complaint, Anderson admitted to the police that he and his friend, Paris Billups, decided to commit a robbery. They randomly pushed a doorbell at an apartment complex and, when a woman opened the door, entered the apartment. Anderson said that he had sexual intercourse with the woman and took a phone and other property, including a video game console. A man in the apartment, Gabriel Jones, was beaten, but Anderson denied that he participated in the beating.

Prior to trial, Anderson moved to suppress two statements he gave to police detectives. He argued that the statements should be suppressed because the detectives violated his right to remain silent. The trial court held a hearing on the motion and found the following facts: Anderson gave the first statement on the evening of May 21, 2008, while he was in custody at the police station. Before he gave this statement,

the detectives advised him of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). After being advised of his rights, Anderson said he did not want to answer any questions. However, the detectives continued to question him, at which point Anderson gave the first statement. The trial court ruled that the detectives obtained this statement in violation of *Miranda* and ordered the statement suppressed in the state's case in chief. The trial court also found that, because the detectives put substantial pressure on Anderson to make the statement and refused to take him back to his cell when he asked for the interview to stop, the statement was involuntary and therefore not admissible to impeach Anderson's own testimony. *See* ECF No. 7-10 at 58–59. This ruling was in accord with Supreme Court precedent, under which a statement obtained in violation of *Miranda*, though always inadmissible in the state's case in chief, may be used to impeach the defendant's own testimony unless the statement was coerced or involuntary. *See Oregon v. Hass*, 420 U.S. 714, 722–24 (1975); *Harris v. New York*, 401 U.S. 222, 224–25 (1971).

Anderson gave his second statement on May 22, 2008, to two detectives who were not part of the interview that resulted in the first statement. The interview that resulted in the second statement began at 12:35 p.m., which was about 12 hours after the first interview ended. Anderson was still in custody at the time of the second statement. The trial court found that the second interview was initiated by the detectives rather than Anderson. These detectives read Anderson his *Miranda* rights a second time and asked him whether he was willing to talk. The court found that Anderson again said no, but the detectives continued to question him. Anderson then confessed to breaking into the apartment, tying up and raping the woman there, and

stealing various items. ECF No. 7-8 at 51–57. The court ruled that this statement, like the first one, was obtained in violation of *Miranda* and therefore was also inadmissible in the state's case in chief. However, the court also found that, despite the *Miranda* violation, Anderson gave the second statement voluntarily. Specifically, the court found that the detectives did not make any threats or promises to Anderson and that the totality of the circumstances, including the duration of the questioning and the conditions of the questioning, did not suggest that the statement was involuntary. The court therefore ruled that the state could use the second statement to impeach Anderson if he testified inconsistently with the statement. ECF No. 7-10 at 59–63.

Anderson and Billups were tried together. Anderson did not testify at trial, and he states that this was because he was concerned about being impeached with the second statement. Billups, however, did testify, and he provided an account that was different from Anderson's confession. He testified, for example, that the woman had voluntarily performed sexual acts with the two men and then invited them into her house. While there, a fight ensued with a male resident. Billups testified that he and Anderson had beaten and choked the man. Billups also testified that he did not see Anderson steal anything. During closing arguments, the attorneys for both Anderson and Billups conceded that they were guilty of substantial battery but not guilty of the other offenses.

The jury found both Anderson and Billups not guilty of rape, burglary, and false imprisonment. The jury found Anderson guilty of substantial battery and robbery. The jury found Billups guilty of substantial battery but not guilty of robbery. The court sentenced Anderson to a total of eleven years' imprisonment and four-and-a-half years' extended supervision.

3

On direct appeal, Anderson's counsel filed a no-merit report, to which Anderson filed a pro se response. The Wisconsin Court of Appeals conducted an independent review of the record, concluded that there was no arguable basis for appeal, and affirmed the conviction. Anderson did not seek review in the Wisconsin Supreme Court. However, he filed a state habeas petition under *State v. Knight*, 168 Wis. 2d 509 (1992), in the Wisconsin Court of Appeals. Under Wisconsin law, this is the proper way to raise a claim of ineffective assistance of appellate counsel.

In his *Knight* petition, Anderson argued that his appellate counsel was ineffective in two respects: (1) not challenging the trial court's decision to allow use of Anderson's second statement for impeachment, and (2) not challenging trial counsel's failure to seek a separate trial from Billups or to object to Billups's trial testimony. The Wisconsin Court of Appeals rejected both of these arguments. First, the court concluded that the trial court's ruling that the second statement was voluntary and could be used for impeachment was correct, and that therefore appellate counsel was not ineffective in failing to challenge the ruling. Second, the court held that Anderson could not challenge appellate counsel's effectiveness in failing to challenge trial counsel's effectiveness because it was Anderson's postconviction counsel who failed to preserve that claim for appeal. Under Wisconsin law, a claim that postconviction counsel was ineffective in failing to preserve a challenge to trial counsel's effectiveness must be raised in the trial court in a motion under Wis. Stat. § 974.06, rather than in a *Knight* petition. *See State ex rel. Rothering v. McCaughtry*, 205 Wis. 2d 675, 681 (Ct. App. 1996). The court therefore did not address the merits of Anderson's claim involving his trial counsel's

4

performance. Anderson sought review of the Wisconsin Court of Appeals's disposition of his *Knight* petition in the Wisconsin Supreme Court, but that court denied review.

Anderson next filed a postconviction motion under Wis. Stat. § 974.06, claiming that postconviction counsel was ineffective in failing to preserve a challenge to trial counsel's performance based on the issues involving severance and Billups's testimony. The trial court held that the motion was procedurally barred under *State v. Escalona-Naranjo*, 185 Wis. 2d 168 (1994). Anderson appealed, and the court of appeals determined that the trial court's application of the procedural bar was correct. However, the court also addressed the merits of Anderson's claims and determined that because trial counsel was not ineffective in failing to seek severance or object to Billups's testimony, postconviction counsel was not ineffective in failing to challenge trial counsel's effectiveness. Anderson again sought review in the Wisconsin Supreme Court, but again that court denied review.

Following the exhaustion of his claims in state court, Anderson filed his federal habeas petition. In his petition, Anderson alleged that the admission of the second statement for impeachment purposes violated his constitutional rights. He also alleged that his trial counsel was ineffective in failing to seek severance of his trial from Billups's trial, although he does not include that claim in his brief in support of his petition. Anderson in his brief also contends that his appellate counsel was ineffective in failing to argue on direct appeal that his second statement was inadmissible for impeachment purposes. However, Anderson did not include that claim in his petition.

## II. DISCUSSION

### A. Use of Second Statement for Impeachment

Anderson raises his challenge to the trial court's ruling regarding the second statement in two forms: as a claim for violation of his constitutional rights under the Fifth Amendment and the due process clause, and via a claim for ineffective assistance of appellate counsel. Although Anderson did not raise the Fifth Amendment/due process claim on direct appeal in his pro se response to appellate counsel's no-merit report, the respondent concedes that Anderson properly exhausted this claim and does not contend that it was procedurally defaulted. *See* Resp. to Pet. ¶ 7, ECF No. 7. The respondent contends that I should not consider the merits of the claim involving appellate counsel's effectiveness because Anderson did not include that claim in his petition but instead raised it for the first time in his brief. However, the respondent has not shown any prejudice from the omission of this claim from the petition itself, and therefore I will consider it.

The parties agree that the state courts resolved both of these claims on the merits, and that therefore the standard of review in 28 U.S.C. § 2254(d) applies. Under this standard, I may grant relief only if the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

The Supreme Court law that applies to Anderson's self-incrimination claim is *Harris v. New York*, 401 U.S. 222 (1971), and related cases. In *Harris*, the court held

6

that a defendant's statement taken in violation of *Miranda*, but which was not coerced or involuntary, may still be used to impeach the defendant's credibility. *Id.* at 222–26. The rationale for allowing the use of the statement for impeachment purposes is that disallowing such use would not significantly add to the principal benefit of the exclusionary rule, which is to deter impermissible interrogation techniques. *Id.* at 225. At the same time, disallowing use of the voluntary statement for impeachment would deprive the jury of a valuable aid to assessing a defendant's credibility, should he testify, and also would grant the defendant "a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." *Id.* at 225–26. Thus, the Supreme Court held, the proper balance is to exclude the statement from the prosecutor's case in chief, but to allow the prosecutor to use the statement to impeach the defendant's testimony, provided that the statement was not coerced or involuntary. *See also Oregon v. Hass*, 420 U.S. 714 (1975). If the statement was coerced or involuntary, it cannot be used for any purpose without depriving the defendant of due process. *See Mincey v. Arizona*, 437 U.S. 385, 398 (1978).

Anderson advances two arguments in favor of the complete exclusion of the second statement. First, he contends that, as a matter of law, any statement taken from a person in custody after that person invokes his right to remain silent must be deemed involuntary. Second, he argues that, even if some statements taken after the person invokes his right to remain silent could be deemed voluntary, under the facts of this case, the trial court should have ruled that the second statement was involuntary. Anderson presented both of these arguments to the Wisconsin Court of Appeals in his *Knight* petition, and the court rejected them both.

7

Anderson's first argument is that any time a suspect invokes his right to remain silent, and the police continue to question him, any resulting statement must be deemed coerced or involuntary. Anderson seems to draw a distinction between statements obtained without giving proper *Miranda* warnings, and statements obtained after proper *Miranda* warnings are given but the suspect expresses a desire to remain silent. In Anderson's view, the former statements are obtained in violation of *Miranda*'s "prophylactic" guidelines only, while the latter statements are obtained in violation of the Constitution itself. Thus, argues Anderson, although the former statements may sometimes be used for impeachment, the latter statements may not. *See* Br. in Supp. at 19–21, ECF No. 16.

Anderson's argument finds no support in the law. The Supreme Court has not drawn any legally significant distinction between statements obtained without proper *Miranda* warnings, on the one hand, and statements obtained with proper *Miranda* warnings but in disregard of the suspect's invocation of his rights, on the other. To the contrary, in *Oregon v. Hass*, the Supreme Court allowed the use of a statement for impeachment even though it was obtained after the suspect received proper *Miranda* warnings and invoked his right to counsel. 420 U.S. at 714–15, 722–23. Likewise, in *Johnson v. Gilmore*, the Seventh Circuit allowed the use of a statement for impeachment even though it was obtained after the suspect received proper *Miranda* warnings and invoked his right to remain silent. 940 F.2d 665, 1991 WL 155984, at *5–6 (7th Cir. 1991) (unpublished). In both of these cases, the courts found that the statements at issue were voluntary even though, under *Miranda*, the police should have ceased questioning the suspects as soon as they invoked their rights. At bottom, then,

8

the only legally significant distinction in the impeachment area is the distinction between statements that were coerced or involuntary and statements that were voluntary. The former are inadmissible for all purposes, while the latter may be used for impeachment. *See Michigan v. Harvey*, 494 U.S. 344, 351 (1990) ("We have mandated the exclusion of reliable and probative evidence for *all* purposes only when it is derived from involuntary statements." (emphasis in original)). There is no rule providing that any statement obtained after the suspect invokes one of his *Miranda* rights is automatically deemed involuntary.

Anderson contends that his argument is supported by the Supreme Court's decision in *Michigan v. Mosley*, 423 U.S. 96 (1975). However, that case did not address when an improperly obtained statement may be used for impeachment. Rather, the issue in *Mosley* was whether (and, if so, when) the police may, without violating *Miranda*, resume questioning a suspect after the suspect invokes his right to remain silent. *Id.* at 100–02. The Court held that the police may resume questioning a suspect who earlier exercised his right to remain silent without violating *Miranda* and rendering any resulting statement inadmissible in the state's case in chief so long as the police "scrupulously honored" the suspect's "right to cut off questioning." *Id.* at 104. This holding of *Mosley* is inapplicable to this case. Although the detectives resumed interrogating Anderson after he invoked his right to remain silent and did not scrupulously honor his right to cut off questioning, the trial court afforded Anderson the appropriate relief for this violation of *Mosley*, namely, exclusion of the statement from the state's case in chief. *Mosley* does not imply that the trial court should have also prevented the state from using the statement for impeachment purposes.

9

Anderson cites to portions of the *Mosley* opinion in which the court quotes extensively from the *Miranda* opinion. And it is true that some language in *Miranda*, when read in isolation, suggests that any statement taken after a suspect invokes his right to remain silent could be considered coerced. For example, the following passage appears in both *Miranda* and *Mosley*:

> Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked.

*Mosley*, 423 U.S. at 100–01 (quoting *Miranda*, 384 U.S. at 473–74). However, even in *Miranda*, the Court recognized that a statement obtained in violation of the procedural safeguards set forth in that case might not be involuntary. *See Miranda*, 384 U.S. at 457 ("In these cases, we might not find the defendants' statements to have been involuntary in traditional terms."). And the Court's later cases, including *Harris* and *Hass*, recognize that not all statements obtained in violation of *Miranda* are involuntary. *See also Harvey*, 494 U.S. at 350–52; *Michigan v. Tucker*, 417 U.S. 433, 440–46 (1974). Thus, despite the language in *Miranda* and *Mosley* suggesting that statements obtained after a suspect expresses a desire to remain silent "cannot be other than the product of compulsion, subtle or otherwise," these cases have not been interpreted to mean that all such statements involuntary. Rather, as noted, courts have found statements to be voluntary even when obtained after the suspect exercised one of his *Miranda* rights, including the right to remain silent. *Hass*, 420 U.S. at 723–24; *Johnson*, 1991 WL 155984, at *5–6.

10

Given the above authority, the Wisconsin Court of Appeals's determination that the trial court did not commit legal error by finding the statement voluntary even though the detectives did not honor Anderson's right to cut off questioning was not contrary to, and did not involve an unreasonable application of, clearly established Supreme Court law.

Anderson's second argument is that the trial court erred in finding that the state had proved that his second statement was voluntary. In evaluating the voluntariness of a confession, a court must consider the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973); *Conner v. McBride*, 375 F.3d 643, 651 (7th Cir. 2004); *see also Dickerson v. United States*, 530 U.S. 428, 433–34 (2000) (stating that *Schneckloth* "totality of the circumstances" test applies to determining whether statement was voluntary). Specifically, a confession is "involuntary" only if circumstances demonstrate that police coercion or overreaching overbore the accused's will and caused the confession. *Schneckloth*, 412 U.S. at 226; *Conner*, 375 F.3d at 651. In applying the totality test, the courts have identified a variety of factors which may be considered to assess voluntariness, including but not limited to: whether the defendant was read his *Miranda* rights; the individualized characteristics of the defendant (i.e., age, intelligence level, education, mental state); interrogation conditions (i.e., duration, environment, access to restroom facilities and food); and the conduct of law enforcement officers (i.e., use of physical punishment). *Conner*, 375 F.3d at 651.

Whether a statement to law enforcement was voluntary is a question of law. *Bobby v. Dixon*, __ U.S. __, 132 S. Ct. 26, 30 n.1 (2011). Although the trial court made various factual findings as part of its voluntariness determination, Anderson did not

challenge the factual findings in the Wisconsin Court of Appeals, and he does not challenge them here. Thus, the question for me is whether the court of appeals's legal conclusion that Anderson's statement was voluntary was contrary to, or involved an unreasonable application of, clearly established Supreme Court law. *Id.*

In arguing that the state court's finding of voluntariness was erroneous, Anderson again relies on *Mosley*, which, as discussed above, was not a case involving the voluntariness of a confession. Rather, the issue there was whether *Miranda* permits the police to resume questioning a suspect at some point after the suspect invokes his right to remain silent. But again, the state courts agreed with Anderson on the issue of whether the state courts violated *Miranda* and *Mosley* when they resumed the interrogation, and the courts thus excluded his confession in the state's case in chief. As I have already held, this *Mosley* violation does not automatically make the confession involuntary.

Because of his misplaced reliance on *Mosley*, Anderson does not meaningfully argue that the state court's finding of voluntariness under the totality-of-the-circumstances test was contrary to, or involved an unreasonable application of, *Schneckloth* and related cases. *See* Br. in Supp. at 23–25, ECF No. 16. However, such an argument would fail. The trial court's findings support its conclusion that, under the totality of the circumstances, the statement was voluntary. The court considered the conduct of the officers (whether they made any threats or promises to Anderson) and the conditions of the interrogation (including its duration) and concluded that these factors did not suggest that Anderson's will was overborn. ECF No. 7-10 at 62. The court of appeals held that the trial court's voluntariness determination was correct, and I

cannot see any way in which the court of appeals's determination was contrary to, or involved an unreasonable application of, *Schneckloth* or any other Supreme Court case.

Finally, I address Anderson's claim that his appellate counsel was ineffective in failing to raise his arguments concerning the second statement on direct appeal. Claims of ineffective assistance of counsel are evaluated under *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, to establish a claim for ineffective assistance, a defendant must show that counsel's performance was deficient and that his deficient performance resulted in prejudice. When the ineffective-assistance claim is predicated on appellate counsel's filing a no-merit report, the defendant must first show that his counsel was objectively unreasonable in failing to find arguable issues to appeal—that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). The defendant must also show a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal. *Id.*

In the present case, the Wisconsin Court of Appeals determined that Anderson's challenge to his appellate counsel's effectiveness failed because he could not demonstrate prejudice from counsel's failure to raise the voluntariness issue on appeal. This finding of no prejudice was based on the court's earlier determination that the trial court correctly found that the second statement was voluntary and therefore admissible for impeachment purposes even though it was obtained in violation of *Miranda*. Because I have already determined that the court of appeals's earlier determination was not contrary to, and did not involve an unreasonable application of, clearly established Supreme Court law, it follows that its prejudice determination also was not contrary to,

13

and did not involve an unreasonable application of, clearly established Supreme Court law.

Accordingly, Anderson is not entitled to habeas relief on his claims premised on the use of his second statement for impeachment purposes.

**B.     Severance Issue**

In his habeas petition, Anderson alleged a claim for ineffective assistance of trial counsel based on counsel's failure to request severance after Billups testified about certain facts relating to a cell phone. *See* Petition at 8–8A. However, Anderson did not pursue that claim when he filed his brief in support of his petition. *See generally* ECF No. 16. In the respondent's brief in opposition to the petition, he argues that I should deem this claim forfeited based on the lack of briefing. In his reply brief, Anderson states that he wants the court to consider this claim but elected not to brief it because he did not feel that the claim needed to be supported by additional argument. Because Anderson wants me to consider this claim, and because the respondent briefed the merits of the claim in his opposition brief, I will not consider it forfeited. I also note that, although the Wisconsin courts denied relief on this claim, in part, based on a state procedural rule, the respondent does not contend that the claim has been procedurally defaulted. Instead, the respondent argues that the court decided the claim on the merits, and that the standard of review in 28 U.S.C. § 2254(d) applies.

The Wisconsin Court of Appeals discussed the ineffective-assistance claim involving severance extensively in its decision on Anderson's *Rothering* motion. *See State v. Anderson*, No. 2013AP1434, ¶¶ 16–23, 2014 WL 4815132, at *4–7 (Wis. Ct. App. Sept. 30, 2014). Because Anderson has chosen not to brief this claim, he has not

14

identified any way in which the court's rejection of the claim was contrary to, or involved an unreasonable application of, clearly established Supreme Court law, or was based on an unreasonable determination of the facts. I have reviewed the court's decision and cannot find any way in it runs afoul of the standards in § 2254(d). Accordingly, Anderson is not entitled to relief on this claim.

## III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED**. The Clerk of Court shall enter final judgment. Pursuant to Rule 11 of the Rules Governing § 2254 Cases, I find that the petitioner has not made the showing required by 28 U.S.C. § 2253(c)(2), and therefore I will not issue a certificate of appealability.

Dated at Milwaukee, Wisconsin, this 21st day of October, 2016.

s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge